## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONNOR PAUL,
915 L Street NW, Apt 804
Washington, DC 20001

                    Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
505 City Parkway West
Orange, CA 92668

    SERVE:   CT Corporation System
              1015 15th St. NW
              Washington, DC 20005

                    Defendant.

Civil Action No. 1:26-cv-247

## COMPLAINT

Plaintiff Connor Paul, by counsel, files this Complaint against Defendant Experian Information Solutions, Inc. In support of his Complaint, Mr. Paul alleges as follows:

## PRELIMINARY STATEMENT

1.      Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2.      The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3.      Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Less than ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers could identify at least one error on their credit reports.[2]

4.      One issue that plagues consumers is a "mixed file," which occurs when a consumer's file is mixed with that of another consumer who has similar identifying information.

5.      Here, Experian has mixed Mr. Paul's credit file with another individual's file. Because of this mixing, Mr. Paul's file contained credit accounts that did not belong to him, as well inaccurate personal identifying information.

6.      Unfortunately, this case is yet another story in Experian's long history of consumer complaints and lawsuits about Experian's pervasive problem with mixing and merging consumer

---

1 *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

2 *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

credit reports because of the overly broad matching criteria that it uses to sort data and compile the credit reports that it sells to its customers.

7.    After Mr. Paul disputed the inaccurate information with Experian, it refused to remove all the inaccurate information from his file.

8.    As a result, Mr. Paul alleges claims against Experian under the Fair Credit Reporting Act ("FCRA") for failing to reasonably ensure the maximum possible accuracy of his credit report in violation of § 1681e(b) and for failing to fulfill its reinvestigation duties in violation of § 1681i.

## JURISDICTION AND VENUE

9.    This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

10.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because the events giving rise to Mr. Paul's causes of action took place in this District and Division.

## PARTIES

11.    Mr. Paul is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

12.    Experian is a foreign corporation with its principal place of business located in Orange, California. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

13.    For years, Mr. Paul's Experian credit report has contained information that does not belong to him, including credit accounts and inaccurate personal identifying information.

14.    Mr. Paul disputed the information with Experian several times, including in July 2025 and November 2025 and asked that the inaccurate information be removed from his report.

15.    In response to his disputes, Experian failed to conduct an adequate investigation. If it had, it would have known that Mr. Paul was mixed with another individual.

16.     For example, upon information and belief, Mr. Paul's Social Security Number was not associated with the inaccurate credit accounts that appeared on his Experian credit report.

17.     Instead, Experian verified its inaccurate reporting.

18.     Because of Experian's conduct, Mr. Paul has suffered significant damages. His credit score was reduced and he suffered emotional distress including stress because of the inaccurate reporting.

### *Experian's FCRA Violations Were Willful*

19.     Experian has substantial notice and knowledge of the "mixed file" problems and failures of its business procedures and systems.

20.     In the early 1990s, the Attorneys General of several states filed an enforcement action against Experian [formerly TRW, Inc.], which resulted in consent orders where Experian agreed to maintain reasonable procedures to prevent the occurrence or reoccurrence of mixed files. *See TRW, Inc. v. Morales*, Civ. Action No. 3-91-1340-H (N.D. Tex. 1991); *FTC v. TRW, Inc.*, 784 F. Supp. 361 (N.D. Tex. 1991).

21.     Then, in 2015, the New York Attorney General was forced to sue Equifax, Experian, and Trans Union because of their conduct as part of mixing consumer credit files. As part of the settlement, Equifax, Experian, and Trans Union agreed to implement procedures to ensure accurate reporting. https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf

22.     Shortly after, the lawsuit resulted in an Agreement of Assurances between Equifax, Experian, Trans Union, and several Attorneys General relating to the bureaus' responsibilities to prevent mixed files. The bureaus entered into an "Assurance of Voluntary Compliance" to ensure that          it          would          implement          changes.

http://www.myfloridalegal.com/EC_Edoc.nsf/0/3D93314A8135213B85257E5B00611557/%24file/Equifax+Experian+TransUnion+05-20-2015.pdf

23.     Despite this extensive notice, Experian's computer system still causes mixed files because Experian does not require or use full identifying information for a potential credit grantor's inquiry even when unique identifiers such as a full Social Security Number are present. Experian does this to sell more credit reports.

24.     Experian acknowledges its mixed file problem. On its website, Experian describes how the mix happens when "two or more people are unintentionally combined in a credit reporting company's database" and identifies individuals must susceptible "who have common names or similar Social Security Numbers, birth dates, or addresses."[3]

25.     Despite its recognition of its mixed file problem, Experian knowingly chooses to ignore the mixed-file problem, even though it already possesses simple, easy, and inexpensive means to correct and avoid the problem.

26.     Moreover, Experian and its competitors have been sued repeatedly for failing to prevent mixed consumer files. *See, e.g.*, *Miller v. Equifax Info. Servs., LLC*, 3:11-cv-1231 (D. Or. 2011) (jury verdict of $18.6 million); *Malverty v. Equifax Info. Servs. LLC*, 8:17-cv-1617 (M.D. Fla. 2017); *Philbin v. Trans Union Corp.*, 101 F.3d 957 (3d Cir. 1996); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329 (9th Cir. 1995); *O'Conner v. Trans Union Corp.*, Civ. No. 97-4633, 1999 WL 773504 (E.D. Pa. Sept. 29, 1999); *Thomas v. Trans Union*, C.A. No. 00-1150 (D. Or. 2002) (jury verdict of $5.3 million remitted to $1.3 million); *Soghomonian v. Trans Union*, (E.D. Cal.)  ($990,000 verdict); *Price v. Trans Union, LLC*, 737 F. Supp. 2d 281 (E.D. Pa. 2010);

---

[3]     https://www.experian.com/blogs/ask-experian/acr-faqs/acr-inaccuracies-in-reporting/,     last visited Jan. 26, 2026.

*Neclerio v. Trans Union, LLC*, Civ. No. 3:11cv1317 (D. Conn. Aug. 17, 2011); *Calderon v. Experian Info. Sols, Inc.*, 2012 U.S. Dist. LEXIS 89375, *10 (D. Idaho 2012); *Howley v. Experian Info. Sols., Inc.*, Civ. No. 09-241 (D.N.J. filed January 16, 2009); *Ainsworth v. Experian Info. Sols., Inc.*, 2011 U.S. Dist. LEXIS 63174 (C.D. Cal. 2011); *Novak v. Experian Info. Sols., Inc.*, 782 F. Supp. 2d 617 (N.D. Ill. 2011); *Comeaux v. Experian Info. Sols.*, 2004 U.S. Dist. LEXIS 10705, *20 (E.D. Tex. 2004); *Cartwright v. Experian*, Civ. No. CV 09-427 (C.D. Cal. 2009); *Campbell v. Experian Info. Sols., Inc.*, 2009 U.S. Dist. LEXIS 106045 (W.D. Mo. Nov. 13, 2009); *Jensen v. Experian Info. Sols., Inc.*, 2001 U.S. Dist. LEXIS 15134 (E.D. Tex. Mar. 30, 2001); *Williams v. Equifax Info. Servs.*, LLC, No. 48-2003-CA-9035-O (Orange County 2007).

27.    Despite these lawsuits and enforcement actions, Experian has not altered its procedures to ensure that the credit reports that it prepares, publishes, and maintains are as accurate as possible, as required by the FCRA at 15 U.S.C. § 1681e(b).

28.    Upon information and belief, Experian has not and does not intend to modify its procedures to comply with this section of the FCRA because compliance would harm Experian's business model of providing the most inclusive reports possible to its paying customers.

29.    As a standard practice, Experian also does not conduct independent investigations in response to consumer disputes.  Instead, it merely parrots the responses of the credit furnishers despite several court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated

procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

30.    Upon information and belief and consistent with its standard policies and procedures, Experian automatically generated its "investigation" results once the furnishers verified the accounts as belonging to Plaintiff, and it did not take any other actions to verify the accuracy of the information that the furnishers provided.

31.    Instead, Experian blindly accepted the furnishers' version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit reports.

32.    Experian continues the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that it fails to conduct a reasonable investigation under the FCRA.

33.    Experian does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

34.    As a result, at all times relevant to this Complaint, Experian's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

<u>**COUNT ONE**</u>**:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**

35.    Mr. Paul incorporates the preceding allegations.

36.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparing Mr. Paul's credit reports and credit files.

37.    Because of Experian's conduct, Mr. Paul suffered actual damages, including: a significantly reduced credit score, embarrassment, stress, and other emotional damages.

38.    Experian's violations of § 1681e(b) were willful, rendering it liable to Mr. Paul for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

39.    In the alternative, Experian's violations were negligent, which entitles Mr. Paul to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i

40.    Mr. Paul incorporates the preceding allegations.

41.    Experian's conduct violated multiple sections of § 1681i, including, but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Mr. Paul's credit file in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Mr. Paul in violation of §1681i(a)(4); (3) failing to promptly delete the disputed inaccurate items of information from Mr. Paul's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Mr. Paul's credit file in violation of §1681i(a)(5)(A).

42.    Because of Experian's conduct, Mr. Paul suffered actual damages, including: a significantly reduced credit score, embarrassment, stress, and other emotional damages.

43.     Experian's § 1681i violations were willful, rendering it liable to Mr. Paul for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

44.     In the alternative, Experian's violations were negligent, which entitles Mr. Paul to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Mr. Paul demands judgment for actual, statutory, and punitive damages against Experian; his attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court deems appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,
**CONNOR PAUL**

By: _/s/ Kristi C. Kelly_
Kristi C. Kelly, DC No. 974872
Casey S. Nash, DC No. 1028868
Kelly Guzzo, PLC
3925 Chain Bridge, Suite 202
Fairfax, VA  22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167
Email: kkelly@kellyguzzo.com
Email: casey@kellyguzzo.com
_Counsel for Plaintiff_